**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| JUANITA G. SPOON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | NO. CIV-04-1283-HE |
| | ) | |
| GABRIEL RIDE CONTROL | ) | |
| PRODUCTS, INCORPORATED, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Before the Court is the motion for summary judgment filed by the defendants. Plaintiff has responded in opposition to the motion. Upon review, the Court concludes summary judgment should be granted in favor of defendants.

Plaintiff filed this action against her former employer alleging discrimination and retaliation under the Americans with Disabilities Act ("ADA") and the Family Medical Leave Act ("FMLA"). In particular, plaintiff alleges the defendant failed to accommodate her disability, denied her requests for medical leave and terminated her because of her disability and her requests for leave. Defendants move for summary judgment on plaintiff's claims.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). When applying this standard, the court "view[s] the evidence and draw[s] all reasonable inferences therefrom in the light most favorable to the

party opposing summary judgment." Martin v. Kansas, 190 F.3d 1120, 1129 (10th Cir. 1999), overruled on other grounds by Bd. of Trustees of Univ. of Ala. v. Garrett, 531 U.S. 356 (2001). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Martin, 190 F.3d at 1129.

Facts

Plaintiff began working for the defendants in 1988.[1] During her tenure, plaintiff had persistent problems complying with the attendance/tardiness policy of the defendants. Most of her tardiness problems occurred when she was assigned to the "first shift," which began around 6:00 a.m. Sometime after 1998, the defendants implemented a new attendance/tardiness policy and began enforcing the policy in a more consistent manner. Plaintiff, who had returned to work for the defendants in 1998 after a two year stint with a related company, received a copy of the new policy and was familiar with its requirements.

In 2002, while working the first shift, plaintiff was constantly tardy for work. In compliance with the policy, plaintiff was given a verbal warning and three subsequent written warnings concerning her tardiness in the months of March, June, July, and November. After violating the tardiness policy again in December, plaintiff was terminated on January 17, 2003.

---

[1]*Defendant Gabriel is a wholly owned subsidiary of defendant ArvinMeritor, Inc. For purposes of summary judgment, the Court has treated both entities as plaintiff's employer. See Defendants' Response, p. 1, n.3.*

During her employment, plaintiff took numerous leaves of absence for medical reasons. Her latest leave of absence occurred in November of 2002, after plaintiff requested and was granted three days of FMLA leave for a shoulder problem.

In April of 2002, plaintiff sought medical treatment for a sleep disorder. As a result of this treatment, plaintiff began taking medication for the condition of narcolepsy. While the medication helped plaintiff stay awake during the day, she claims it did not help her wake up in the morning. In spite of this, plaintiff never requested a move to a later shift.

In October of 2002, plaintiff spoke with Tom Hanson, defendants' human resources manager, about the FMLA and the medical attention she had been receiving for her narcolepsy. In response to her inquiry, plaintiff claims Mr. Hanson told her that the FMLA was designed for people with medical illnesses not sleep problems.[2] Plaintiff did not request any type of FMLA leave at that time or provide a doctor's note or other documentation stating that leave was required for her condition.

On January 6, 2003, plaintiff's doctor informed her that her narcolepsy was considered a medical condition and that she should request some type of FMLA leave to deal with her problems at work. When plaintiff returned to work, she requested and received an FMLA form from her supervisor. On the same day she requested the form or the day after, plaintiff received a written warning regarding her attendance in November. She received her termination notice, based on her December attendance, a little over a week later.

---

[2] Mr. Hanson claims this conversation never occurred.

After her termination, plaintiff returned the FMLA form, which had been completed by her doctor, to the defendants. In the form, plaintiff's doctor indicated that she had a "sleeping disorder" which made it very difficult for plaintiff to awaken in the morning. He further stated, however, that such condition did not require plaintiff to work only intermittently or on less than a full time schedule. After returning the form to defendants, plaintiff requested her job back but this request was denied.

On September 10, 2003, plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") claiming disability discrimination. Specifically, plaintiff claimed that on January 17, 2003, the date of her termination, she was "discriminated against" because of her narcolepsy.

Exhaustion

Defendants claim plaintiff has failed to exhaust her administrative remedies with respect to her ADA retaliation and accommodation claims. In addition, defendants assert that plaintiff's claims that she was "regarded as" or had a "record of" disability which led to her termination have also not been exhausted.

In order for this Court to have jurisdiction over plaintiff's ADA claims, she must have exhausted her administrative remedies before the EEOC. MacKenzie v. City and County of Denver, ___ F.3d ___, 2005 WL 1649203, at *5 (10th Cir. Jul. 14, 2005). The purpose of exhaustion is to give notice of the alleged violation to the employer and to give the EEOC an opportunity to conciliate the claim. Ingels v. Thiokol Corp., 42 F.3d 616, 625 (10th Cir. 1994). Generally, the claims raised by a plaintiff in federal court are "limited by the scope

of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC." Id. "A party's failure to mark a box for a particular type of discrimination creates a presumption that the complainant is not asserting claims under those theories." Belcher v. Boeing Commercial Airplane Group, 105 Fed. Appx. 222, 226, (10th Cir. Jul. 1, 2004)[3] (citing Gunnell v. Utah Valley State Coll., 152 F.3d 1253, 1260 (10th Cir.1998)).

In this case, plaintiff neither checked the box indicating an ADA retaliation claim nor adequately described such a claim in the narrative portion of her charge. In addition, plaintiff never mentioned that she either requested an accommodation from her employer for her condition or that the defendants refused such a request. The allegations contained in plaintiff's charge, which were limited to the date of her termination, would not have reasonably led to an investigation into either retaliation or a failure to accommodate. As a result, the Court lacks jurisdiction to proceed on plaintiff's retaliation and failure to accommodate claims under the ADA.

With respect to the allegations surrounding plaintiff's disability, the Court concludes such claims are not barred. While plaintiff did not specifically use the terms "regarded as" or "record of" when describing her disability, she did allude to the fact that she had notified defendants of her "disability." Though the allegations are sparse, the Court concludes any reasonable investigation would have included these claims. As a result, plaintiff's "regarded

---

[3] *Belcher is an unpublished decision cited for persuasive value only pursuant to 10th Cir. R. 36.3(B).*

as" and "record of" claims are not barred from review.

<u>Disability</u>

In order to establish an ADA discrimination claim, plaintiff must prove: "(1) she is a disabled person as defined by the ADA; (2) she is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) her employer discriminated against her because of her disability." <u>MacKenzie</u>, ___ F.3d at ___, 2005 WL 1649203, at *5. Disability is defined as "(1) a physical or mental impairment that substantially limits one or more of an individual's major life activities, 42 U.S.C. §12102(2)(A); (2) a record of such an impairment, 42 U.S.C. § 12102(2)(B); or (3) being regarded as having such an impairment, 42 U.S.C. § 12102(2)(C)." <u>Id.</u> at *6.

Plaintiff claims that her physical condition of narcolepsy substantially limits her ability to work. Working has been recognized as a major life activity. <u>Id.</u> However, to establish such a limitation, plaintiff must show that she is significantly restricted in her ability to work as compared to the ability of the average person in the general population having comparable training, skills and abilities.. <u>Id.</u> "[T]he inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." <u>Nielsen v. Moroni Feed Co.</u>, 162 F.3d 604, 611 (10th Cir. 1998) (internal quotations omitted). In addition, "an employer does not necessarily regard an employee as substantially limited in the major life activity of working simply because it believes that individual is incapable of performing a particular job." <u>Id.</u> (internal quotations omitted). Rather, plaintiff has the burden of demonstrating that "she is unable to perform either a class of jobs or a broad range

of jobs in various classes." MacKenzie, ___ F.3d at ___, 2005 WL 1649203, at *6. See Nielson, 162 F.3d at 612 ("[a]n impairment must substantially limit employment in general, not merely the particular job that the plaintiff may wish to hold.") (internal quotations omitted).

In this case, plaintiff has not established an impairment to a major life activity. It is undisputed that since the time plaintiff was terminated, she has worked at a nightclub and is currently working as a blackjack dealer at a casino with no problems. At most, the record reflects that plaintiff had difficulty working the first shift at defendants' plant because she had trouble waking up early in the morning. Plaintiff has presented no evidence to show that she is substantially limited, that the defendants regarded her as substantially limited, or that she had a record of substantial limitation in performing either a class of jobs or a broad range of jobs in various classes. As a result, plaintiff cannot establish, as a matter of law, that she is a disabled person under the ADA. See Carlile v. Conoco, Inc., 23 Fed. Appx. 963, 967 (10th Cir. 2001).[4] Accordingly, summary judgment is **GRANTED** in favor of defendants on plaintiff's ADA claims.

FMLA

Plaintiff claims the defendants interfered with her right to take FMLA leave and retaliated against her for requesting FMLA leave by terminating her employment. In order to withstand summary judgment on an interference theory, an employee's termination must

---

[4]*Carlile* is an unpublished opinion cited for persuasive value only pursuant to 10th Cir. R. 36.3(B).

have been related to her request for an FMLA leave.  Gunnell, 152 F.3d at 1262.  The same holds true for plaintiff's retaliation claim in that her termination must be causally connected to her requests for FMLA leave.  Richmond v. ONEOK, Inc., 120 F.3d 205, 208-09 (10th Cir.1997).  "If dismissal would have occurred regardless of the request for an FMLA leave . . . an employee may be dismissed even if dismissal prevents her exercise of her right to an FMLA leave."  Bones v. Honeywell Intern., Inc., 366 F.3d 869, 877 (10th Cir. 2004).

In this case, Mr. Hanson submitted a sworn affidavit stating that the plaintiff was terminated because of her consistent violations of the attendance/tardiness policy and that she would have been terminated regardless of her request for leave.  Except for her own speculations, plaintiff offers no evidence contradicting these sworn statements or the evidence offered in support of such statements.  The record reflects that plaintiff had a history of tardiness and was warned in advance of her requests for FMLA leave that her behavior was in violation of policy.  Plaintiff admits she violated the attendance/tardiness policy and that she was terminated only after a process of progressive discipline.  As plaintiff was terminated because she failed to comply with the attendance/tardiness policy and she would have been terminated regardless of her request for FMLA leave, her FMLA claims cannot survive summary judgment.  Accordingly, summary judgment is **GRANTED** in favor of defendants on plaintiff's FMLA claims.

## CONCLUSION

In accordance with the above findings of the Court, defendants' retaliation and accommodation claims are **DISMISSED**.  Defendants' motion for summary judgment is

**GRANTED** as to the remaining claims.  Judgment will be entered separately.

   **IT IS SO ORDERED**.

Dated this 2nd day of August, 2005.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE